IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

FLEURETTE ALLEN,

Defendant.
_______________________________________/

No. C 11-00286 CRB

**ORDER RE STIPULATED BENCH TRIAL**

This Court conducted a stipulated bench trial in this criminal action prosecuting Fleurette Allen ("Defendant") for being a felon in possession of a firearm. After this Court denied Defendant's Motion to Suppress Evidence and Statements (dkt. 23) from the bench, the Court chose to reconsider all of the issues before writing an order.

Defendant moved this Court to suppress a handgun seized from his girlfriend's apartment on the grounds that the warrantless search of the apartment violated his Fourth Amendment rights. The Government argued that the search was valid and that the gun should be admitted because (1) Defendant did not have a reasonable expectation of privacy in the apartment, (2) the apartment's property manager had apparent authority to consent to the search, (3) the doctrine of inevitable discovery permits admission of the gun, and (4) exigent circumstances justified the warrantless search.

Because the property manager had apparent authority to consent to the search of the apartment, this Court denies the Motion to Suppress and finds Defendant GUILTY. The parties are ordered to confer regarding a sentencing date.

## I. BACKGROUND

Defendant's girlfriend, Passion Wilson, lived in an apartment in Franciscan Towers, located at 217 Eddy Street in San Francisco. Wilson Decl. (dkt. 23-2) ¶ 2; Opp'n (dkt. 25) Ex. 1 (Aquino Decl.) ¶ 2. Defendant stayed with Ms. Wilson nine nights per month, the maximum number of nights that residents were permitted to have overnight guests. Allen Decl. (dkt. 23-1) ¶ 2. Defendant considered the apartment to be his most stable residence and kept many personal belongings there. Id. ¶ 7.

On April 5, 2011, a fire broke out in the Franciscan Towers building and rendered the building uninhabitable. Aquino Decl. ¶¶ 2, 4. All residents were evacuated. Id. ¶ 3. After the fire, the building's owners hired ATI, a construction company, to begin repair work on the building. Id. ¶ 5. The building was placed under twenty-four hour security and no one was permitted to enter the building without an escort from ATI or the building's owners. Allen Decl. ¶ 9. Residents were not permitted to reenter the building for more than two weeks. Aquino Decl. ¶ 6. During this time, at the request of some residents, social workers retrieved some personal items from the building and returned them to the residents. Luskey Decl. (dkt. 26) Ex. A, at 1. Residents were also permitted to reenter the building at a later time in order to retrieve belongings. Bosworth Decl. (dkt. 26) Attach D.

On April 13, 2011, a construction worker, Miguel Ortega, was removing refrigerators from units in the building when he was approached by Defendant. Opp'n Ex. 2 (Ortega Decl.) ¶ 4. Defendant asked Ortega if ATI was planning to throw away the refrigerators. Id. ¶ 5. When Ortega told Defendant that the refrigerators were to be taken to the dump, Defendant asked Ortega if he would go to Ms. Wilson's apartment and retrieve a loaded handgun from the motor compartment of the refrigerator. Id. ¶ 5; Opp'n Ex. 3 (Scafani Decl.) ¶ 4. Ortega refused to do so and instead informed his supervisor about the gun. Ortega Decl. ¶ 5. Later that day, Ortega and his supervisor entered the apartment, confirmed

United States District Court
For the Northern District of California

that a handgun was located in the motor compartment of the refrigerator, and then left the apartment and locked the door. Id. ¶ 6. The next day, the supervisor informed the property manager on duty about the gun. Id. ¶ 7. The property manager called the SFPD to ask them to send an officer to retrieve the gun. Luskey Decl. Ex. C. The property manager told the dispatcher that the building was unoccupied. Id.; Scafani Decl. ¶ 3. Two SFPD officers, Officers Scafani and Linares, arrived at Franciscan Towers on the morning of April 14, 2011. Scafani Decl. ¶ 3. After speaking with Ortega about the situation, Ortega escorted the officers to Ms. Wilson's apartment. Id. ¶ 5. Officer Scafani entered the apartment and removed the gun from inside of the refrigerator. Id. ¶ 8. Scafani then arrested Defendant, who happened to be outside the building at the time, for being a felon in possession of a firearm. Id. ¶¶ 9, 10.

Defendant moves to suppress the gun as the fruit of an illegal search because Officers Scafani and Henderson did not have a warrant to search Ms. Wilson's apartment. Mot at 2. The Government argues that the search did not violate the Fourth Amendment because Defendant did not have a reasonable expectation of privacy in the apartment or, alternatively, because the property manager had apparent authority to consent to a search of the apartment. Opp'n at 5, 14. The Government also argues that the gun is admissible under the doctrine of inevitable discovery and that exigent circumstances justified the warrantless search. Id. at 10, 14.

## II. DISCUSSION

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (citations and internal quotation marks omitted). "In order to benefit from Fourth Amendment protections, an individual must demonstrate a subjective expectation that his activities would be private, and he must show that his expectation was one that society is prepared to recognize as reasonable." United States v. Young, 573 F.3d 711, 715-16 (9th Cir. 2009) (internal quotation marks omitted).

**A. Expectation of Privacy**

Houseguests have a reasonable expectation of privacy in their host's home. Minnesota v. Olson, 495 U.S. 91, 100 (1990). The government does not contest Defendant's assertion that he had a reasonable expectation of privacy in Ms. Wilson's apartment. The Government does contend, however, that Defendant's reasonable expectation of privacy was frustrated because Ms. Wilson's lease had been terminated, see Opp'n at 7, because the fire rendered the building unsafe for human occupation, see id. at 10, and because Defendant told a construction worker about the location of the gun, see id. at 7. As there are other grounds for finding Officer Scafani's search valid, this Court does not decide whether Defendant maintained a reasonable expectation of privacy in the apartment despite these factors.

The Government also argues that the gun is admissible based on the inevitable discovery doctrine, see id. at 14, and that the exigent circumstances exception justified the warrantless search, see id. at 10. Again, however, this Court need not decide whether those doctrines apply in this case.

**B. Consent**

Alternatively, the government argues that the search was valid because the property manager had apparent authority to consent to the search. Id. at 14. This theory does justify Officer Scafani's warrantless search of the apartment, and on this theory, the motion to suppress is denied.

"A third party's consent to the search of another's belongings is valid if the consenting party has either actual or apparent authority to give consent." United States v. Ruiz, 428 F.3d 877, 880 (9th Cir. 2005). Apparent authority exists where the officer believes an untrue fact that, if true, would have given the consent-giver the authority to consent to a search of the premises, and where it was objectively reasonable for the officer to believe the untrue fact. Espinosa v. City of S.F., 598 F.3d 528, 536 (9th Cir. 2010). The mistake must be a mistake of fact, not of law. See United States v. Davenport, Nos. 96-30277, 96-30292, 96-30294,1997 WL 650964, at *3 (9th Cir. 1997) (holding that an officer's mistaken belief



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

of law that a lessor has the authority to consent to a search of the lessee's currently occupied premises did not create apparent authority).

In order for apparent authority to exist in the instant case, it must have been objectively reasonable for Officer Scafani to believe that the apartment had been abandoned by its tenants or that the tenants had been evicted. Ordinarily, a landlord may not consent to a search of premises occupied by a tenant, but once the landlord-tenant relationship has terminated, the landlord may enter the premises without notice and may consent to a police search of the premises. Cal. Civ. Code § 1954(e)(3) ("No notice of entry is required under this section: . . . (3) After the tenant has abandoned or surrendered the unit."); see United States v. Sledge, 650 F.2d 1075, 1080 n.10 (9th Cir. 1981); People v. Ingram, 176 Cal. Rptr. 199, 202 (Ct. App. 1981) ("A landlord may consent to a search of premises abandoned by a tenant.").

There are two separate reasons that Officer Scafani reasonably could have believed that the landlord-tenant relationship between Franciscan Towers and Ms. Wilson had been terminated and therefore that the property manager had the authority to consent to a search. The first is that under California law, either party to a lease may terminate the lease if the premises are destroyed. Cal. Civ. Code § 1932(2) ("The hirer of a thing may terminate the hiring before the end of the term agreed upon: . . . (2) When the greater part of the thing hired, or that part which was and which the letter had at the time of the hiring reason to believe was the material inducement to the hirer to enter into the contract, perishes from any other cause than the want of ordinary care of the hirer."); Cal. Civ. Code § 1933(4) ("The hiring of a thing terminates: . . . (4) By the destruction of the thing hired."). Based on this principle of California landlord-tenant law, coupled with the representations the property manager made to the SFPD dispatcher about the apartment being vacant, see Scafani Decl. ¶ 3, it was objectively reasonable for Officer Scafani to believe that Ms. Wilson's lease had been terminated as a result of the fire and, thus, that the property manager had the authority to consent to a search of Ms. Wilson's apartment. This belief was an objectively reasonable

mistake of fact, not law, and if the mistaken fact were true, it would have conferred authority to consent on the property manager.

The second reason it was objectively reasonable for Officer Scafani to believe the property manager had authority to consent to a search is the condition of Ms. Wilson's apartment and the building as a whole at the time of the search. There is no definitive list of facts that may lead to a reasonable belief of abandonment, but in Sledge the Ninth Circuit found apparent authority where the tenants had given their landlord thirty days notice of their intent to vacate, had removed all personal belongings from the apartment, and the apartment was "empty of furnishings not belonging to the landlord" at the time that the landlord consented to the police search. 650 F.2d at 1076, 1082. Similarly, in determining whether eviction had actually taken place, the Ninth Circuit in Young considered whether the defendant's personal belongings had been removed from his hotel room and placed into storage and whether his room key worked. 573 F.3d at 717.

Here, as in Sledge, it was objectively reasonable to believe that the apartment had been vacated. Most of the personal belongings inside had been removed from the apartment and placed into storage. Bosworth Decl. Attach. D; Scafani Decl. ¶ 7 ("The inside of Unit #208 was essentially empty, aside from a few large pieces of furniture."). Tenants were no longer permitted to enter any of the Franciscan Towers apartments. Mot. at 3. The building was uninhabitable and even basic appliances such as refrigerators had to be removed from the apartments. See Opp'n at 2. Additionally, when asking the SFPD to send an officer to collect the gun, the property manager told the dispatcher that the building was unoccupied due to the fire. Scafani Decl. ¶ 3. Under these circumstances, it was reasonable for Officer Scafani to believe that the property manager had the authority to consent to a search of the apartment. Again, the belief that the apartment was vacant was an objectively reasonable mistake of fact and, if that fact were true, it would have conferred authority to consent on the property manager.



United States District Court
For the Northern District of California

For both of these reasons, Officer Scafani's warrantless entry into and search of the apartment did not violate the Fourth Amendment because of the property manager's apparent authority to consent to the search.[1]

## III. CONCLUSION

For the foregoing reasons, this Court denies the Motion to Suppress, on the grounds that the warrantless search was justified by the property manager's apparent authority to consent to the search, and finds Defendant GUILTY.

**IT IS SO ORDERED.**

Dated: March 5, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

[1] It also was reasonable for Officer Scafani to believe that the property manager could consent to a search of the refrigerator. Even if under some circumstances a landlord might not have the authority to consent to a search of a container owned by a tenant and left behind by the tenant in an abandoned apartment (and this Court need not determine whether such circumstances exist), the landlord in the instant case would have had the authority to consent to a search of the refrigerator once the landlord-tenant relationship had terminated. "A third party has actual authority to consent to a search of a container . . . if the third party has mutual use of the container and joint access or control over the container." Ruiz, 428 F.3d at 880. Here, as discussed, termination of the landlord-tenant relationship would have given the landlord access to the apartment and, thus, to the refrigerator inside, which Franciscan Towers owned. See Goulet Decl. (dkt. 37) Attach. at 6. Accordingly, the property manager could have consented to a search of the refrigerator under the common authority doctrine.

Although the terms of the lease do not enter into the analysis of apparent authority (because the issue is what it was reasonable for the officer to believe, not what was actually true), it was objectively reasonable for Officer Scafani to believe that the property manager had common authority over the refrigerator because refrigerators and other major appliances in nearly all rented apartments are owned by the landlord, not the tenant.